UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| INCYTE CORP. and INCYTE HOLDINGS CORP., <br><br> Plaintiffs, <br> v. <br><br> APOTEX INC., <br><br> Defendant. | Civil Action No. 24-4366 (CPO)(MJS) <br><br> *Document Filed Electronically* |
| INCYTE CORP. and INCYTE HOLDINGS CORP., <br><br> Plaintiffs, <br> v. <br><br> APOTEX INC., <br><br> Defendant. | Civil Action No. 25-4044 (CPO)(MJS) <br><br> *Document Filed Electronically* |

**STIPULATION ESTABLISHING ELECTRONIC DISCOVERY PROTOCOL**

The parties, through their counsel, have stipulated and agreed to give effect to this Stipulation Establishing Electronic Discovery Protocol ("Protocol") as set forth below to facilitate discovery.

I.   **GENERAL PROVISIONS**

   A.   **General.** The procedures set forth in this Protocol shall govern the production of documents and ESI in this litigation by a Party or third party (each a "Producing Party") for receipt by the Parties receiving the production (each a "Receiving Party"), unless the Parties agree in writing to change them or they are changed by the Court.

B.  **Non-Discoverable ESI**. Consistent with the proportionality standard set forth in Federal Rule of Civil Procedure 26(b)(1), and absent a party's specific written notice for good cause, the following categories of ESI need not be preserved or, if preserved, searched for the purposes of production:

(1) ESI deleted in the normal course of business before the time a preservation obligation in this matter came into effect;

(2) Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media, and that are substantially duplicative of data more accessible elsewhere;

(3) Deleted, "slack," fragmented, or unallocated data only accessible by forensics;

(4) Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

(5) On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

(6) Data in metadata fields frequently updated automatically, such as last-opened or last-printed dates;

(7) Electronic data (*e.g.*, call logs, email, calendars, contact data, notes, *etc.*) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), if a copy of such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage);

(8) Voicemail, including Telephone or VOIP voice messages;

(9) Text messages and instant messages not retained in the ordinary course of business;

(10) Server, system, network, or software application logs;

(11) Data remaining from systems no longer in use that is unintelligible on the systems in use;

(12) Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report;

(13) Software files included on the National Institute of Standards and Technology (NIST) Modern RDS (minimal) list;

(14) Structural files not material to individual file contents (*e.g.*, .CSS, .XSL, .XML, .DTD, etc.);

(15) Operating System files that do not store user-created content (*e.g.*, CAT, DLL, DMP, EXE, FON, PNF, OPS, SYS, etc.);

(16) Application source code, configuration, and other similar files necessary for the function of an application that do not store user-created content during ordinary use (*e.g.*, BAK, BIN, CFG, DBF, DAT, JS, JSON, JAR, LUA, MSB, RES, WINNT, YTR, etc.).

C. **Disaster-Recovery Backup Data.** Consistent with the proportionality standard, and absent a party's specific written notice of good cause, no party shall be required to modify or suspend procedures, including rotation of backup media, used in the normal course of business to back up data and systems for disaster recovery purposes. Absent a showing of good cause, such backup media shall be considered to be not reasonably accessible.

  D. **No Designation of Discovery Requests**. Productions of Documents and ESI in the reasonably usable form set out in this Protocol need not be organized and labeled to correspond to the categories in the parties' requests.

  E. **Confidentiality Order**. Procedures for the handling of materials subject to claims of attorney-client privilege, work-product immunity, and/or other privileges and immunities are set out in the Confidentiality Order entered in this litigation.

  F. **Color**. The Producing Party need not, in the first instance, produce Documents containing color in color format. The Receiving Party may request production of such Documents in color format by (1) providing a list of the Bates numbers of the Document(s); and (2) explaining the need for production of the Documents in color format. Consent to produce in color shall not be unreasonably withheld.

  G. **Appearance and Content**. Other than as required in this paragraph, no electronic document may be intentionally manipulated to change how the source document would have appeared, without prior agreement of the Receiving Party except that hidden information (such as redline or comments) will be revealed. "Dynamic fields" (such as auto-date and time) shall be produced showing the field code (e.g., [AUTODATE]) or the values as in the original document, rather than the values for such fields existing at the time the file is processed. Therefore, subject to any appropriate redaction and any revealed hidden information, each document's electronic image shall cover the same information and image as the original document. This means that font size, bold, italics, underline and other font features shall be maintained. If a document is illegible or unviewable to the Receiving Party, the Parties shall, at the Receiving Party's request, discuss appropriate measures to address the issue through an agreed-upon resolution.

      **H.**    **Third-Party Software.** To the extent ESI produced pursuant to this Order cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall cooperate and seek to attempt to minimize any expense or burden associated with the production and review of such ESI. The Parties shall meet and confer to address such issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third-party.

      **I.**    **Cost Shifting.** Generally, the costs of production of ESI produced pursuant to this Order shall be borne by each Producing Party. However, the Court may apportion the costs of electronic discovery upon a showing of good cause by the Party seeking apportionment.

## II. DEFINITIONS

      **A.**    "**Documents**" includes writing, drawings, e-mails, graphs charts, photographs, sound recordings, images, and other data, data records or data compilations -- stored in any medium (including cloud-based or cloud sourced media) from which information can be obtained. "Documents" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

      **B.**    "**Electronically stored information**" or "**ESI**" means information that is stored electronically, regardless of the media or whether it is in the original format in which it was created. "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

      **C.**    "**Metadata**" means (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File, or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Metadata is a subset of ESI.

  **D.**  "**Native File**" means the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

  **E.**  "**Prospective Production**" means any document or ESI production by either party that occurs after the Court's August 20, 2025 text order (Dkt. No. 84).

  **F.**  "**Prior Production**" means any document or ESI production by either party that occurred before the Court's August 20, 2025 text order (Dkt. No. 84).

### III. PROSPECTIVE PRODUCTION OF HARD COPY DOCUMENTS

  **A.**  <u>**TIFFs.**</u>  Producing Parties shall produce Documents in the form of single-page, Group IV TIFFs at 300 dpi. They shall name each TIFF image as its corresponding Bates number. They shall maintain Original Document orientation (*i.e.,* portrait to portrait and landscape to landscape). They shall provide TIFF image files in a self-identified "Images" folder.

  **B.**  <u>**OCR Text Files.**</u>  Producing Parties shall provide Optical Character Recognition ("OCR") text files as a single text file for each Document, not one text file per page. They shall name each file with the beginning Bates number assigned to its corresponding Document, followed by .txt. They shall provide OCR text files in a self-identified "Text" directory. To the extent that a Document is redacted, they shall produce OCR text files for that Document that shall not contain text for redacted portions.

  **C.**  <u>**Database Load Files/Cross-Reference Files.**</u>  Unless otherwise agreed by the Parties, Producing Parties shall provide Documents with Concordance-compatible image and data load files (*i.e.,* .OPT and DAT files) using standard Concordance delimiters. They shall provide Concordance-compatible image and data load files *(i.e.,* .OPT and DAT files) in a self-identified data folder.

D.  **Coding Fields.**  Producing Parties shall produce Documents with at least the following searchable information in accompanying delimited data files: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodians, (6) OCRTextPath, and (7) Confidentiality.  When a Producing Party determines in good faith judgment that it is practicable to accompany Documents with other metadata fields in Table 1, the Producing Party shall produce those Documents with the practicable metadata fields.  Producing Parties shall identify custodians using any of the following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first name_last name"; or "FLast."  Producing Parties shall use a uniform description of a particular custodian, and separate multiple custodians in the "Custodian" field by a semicolon.  For Documents with no individual custodian (*e.g.*, centralized files, document management systems), Producing Parties shall (a) use the relevant entity name(s) in the "Custodian" field.

E.  **Bates Numbering.**  Producing Parties shall assign each TIFF image a Bates number that: (1) is unique across the entire production; (2) maintains a constant length across the entire production (*i.e.*, padded to the same number of characters); (3) contains no special characters or embedded spaces; and (4) is sequential within a given Document.  If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.

F.  **Parent-Child Relationships.**  Producing Parties shall preserve parent-child relationships (*i.e.*, the association between an attachment and its parent Document), to the extent they exist in the manner in which the Documents are maintained in the ordinary course of business. For example, if a Producing Party produces a printout of an email with its attachments, it shall produce such attachments behind the email in the order in which they were attached.

G. **Unitizing of Documents.** A Producing Party shall not, when scanning Documents: (1) merge distinct Documents into a single record; or (2) split single Documents into multiple records (*i.e.*, Documents should be logically unitized).

IV. PROSPECTIVE PRODUCTION OF ESI

   A. **Avoidance of Duplicate Production**

   (1) "Duplicate ESI" means files that are exact duplicates based on the files' MD5 hash, SHA-1 hash, email duplicate spare messages (as defined by Relativity), or SHA-256 hash values. The Producing Party need produce only a single copy of responsive Duplicate ESI. A Producing Party shall take reasonable steps to de-duplicate ESI globally (i.e., both within a particular custodian's files and across all custodians). Entire document families may constitute Duplicate ESI. De-duplication shall not break apart families. When the same Duplicate ESI exists in the files of multiple custodians, the additional custodians shall be listed in the "All Custodians" field identified in Table 1 to the extent such information is available.

   (2) If the Producing Party collects and processes additional ESI which contains duplicates of ESI previously produced, that Party also shall provide an overlay file to allow the Receiving Party to update the "All Custodians" field. The overlay file shall include both all custodians listed in the "All Custodians" field in prior productions and any custodians identified in the newly processed ESI.

   B. **TIFFs.** Producing Parties shall produce ESI in the form of single-page, black and white, Group IV TIFFs at 300 dpi. They shall name each TIFF image as its corresponding Bates

number. They shall maintain original document orientation (*i.e.*, portrait to portrait and landscape to landscape). They shall provide TIFF image files in a self-identified "Images" folder.

      C.    **Parent-Child Relationships.**  Producing Parties shall preserve parent-child relationships (*i.e.*, the association between an attachment and its parent file).

      D.    **Metadata Fields and Processing.**  Producing Parties shall produce each of the metadata and coding fields set forth in Table 1 that can be extracted from ESI for that ESI. They are not obligated to populate manually any of the fields in Table 1 if such fields cannot be extracted from the ESI, except for the following: (1) BegBates, (2) EndBates, (3) BegAttach, (4) EndAttach, (5) Custodians, (6) NativeLink, (7) Confidentiality, and (8) Parent ID fields (which the Producing Party or its vendor may populate). They shall identify custodians using any of the following conventions, as appropriate: "Last Name, First Name"; "last name_first name"; "first name_last name"; or "FLast." A Producing Party shall use a uniform description of a particular custodian and separate multiple custodians by a semicolon in the "Custodians" field. For documents with no individual custodian (*e.g.*, centralized files, document management systems), Producing Parties shall (a) use the relevant entity name(s) in the "Custodian" field and (b) identify the source of the documents in the "Source" field.

      E.    **Extracted Text Files.**  For all ESI (other than multimedia or graphic files), Producing Parties shall provide an extracted text file along with its corresponding TIFF image file(s) and metadata. They shall name each extracted text file such that it is identical to that of the first image page of its corresponding file, followed by .txt. They shall not use file names that contain special characters or embedded spaces and shall extract the text of native files directly from the native file. If a file contains redactions, however, the Producing Party may provide OCR of the redacted file in lieu of extracted text.

9

**F.      Database Load Files/Cross-Reference Files.** Unless otherwise agreed to by the parties, Producing Parties shall include in each production (1) a metadata file (DAT file) using standard Concordance delimiters or carat pipe delimiters and (2) an image load file in Opticon format (.OPT file). They shall provide in a self-identified "Data" folder Concordance-compatible image and data load files (*i.e.*, .OPT and DAT files).

**G.      Native Files.** The following governs the production of native files.

(1)   Producing Parties shall produce source code, large diagrams, Excel files and/or .csv files, , and audio/video multimedia files in native format ("Native Files"), unless they have redactions.

(2)   Producing Parties shall provide native files in a self-identified "Natives" directory. Producing Parties shall produce each native file with a corresponding single-page TIFF placeholder image, which shall state the ESI is being produced as a native file and provide the Confidentiality Designation, if any. Producing Parties shall name each native file with the beginning Bates number that is assigned to that specific record in the production.

(3)   Producing Parties shall include a "NativeLink" entry for each native file in the .DAT load file indicating the relative file path to each native file on the production media. Producing Parties shall produce native files with extracted text and applicable metadata fields as set forth in Paragraphs V.F and V.G. Producing Parties may produce redacted files in either native format or as TIFF image files and OCR in lieu of a Native File, TIFF placeholder image and extracted text file. Producing Parties shall exclude

any metadata fields for redacted files that would reveal privileged information.

(4) If produced as a TIFF, each Producing Party shall make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals hidden data from redacted native files that are produced as TIFF image files and ensures that redacted native files will be formatted to be readable. (For example, column widths should be formatted so that numbers do not appear as "#########").

**H.** **Structured Data.** To the extent that responding to a discovery request requires production of ESI contained in a database, a Producing Party may query the database for discoverable information and generate and produce a report in a reasonably usable and exportable Excel or .csv format. The first line of each such file will, to the extent not unduly burdensome, show the column headers for each field of data included.

**I.** **Audio and Video Files.** Producing Parties shall produce audio and video files in a reasonably usable format as may be agreed upon by the Parties.

**J.** **Requests for Other Native Files.** Other than as specifically set forth above, a Producing Party need not produce ESI in native format. The Receiving Party may request production in native format of other documents by (1) providing a list of the Bates numbers of ESI it requests to be produced in native format; and (2) explaining the need for reviewing such ESI in native format. The Responding Party may object and the parties shall meet and confer to attempt to resolve any such objection prior to seeking resolution from the Court. If the Producing Party agrees to produce such a native file, the Producing Party shall produce in response to such request each native file with corresponding production number fields and a "NativeLink" entry in the DAT

load file indicating the relative file path to each native file on the production media, all extracted text (other than for multimedia or graphic files), and applicable metadata fields set forth in Table 1.

### Table 1-ESI Metadata Fields

| FIELD NAME | DESCRIPTION |
| --- | --- |
| Author | Author of document, if identified in metadata |
| Begin Bates | Unique document identifier and the starting page of a document (*e.g.*, ABC00000001) |
| Bates End | The end number of a document (*e.g.*, ABC0000099) |
| Bates Beg Attach | The starting number of a group or family of documents (*e.g.*, ABC0000001) |
| Bates End Attach | The end number of a group or family of the document (*e.g.*, ABC0000099) |
| Bates Attach Range | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| Custodian | The owner of a document |
| All Custodians | List of all custodians who had custody of the document; when global de-duplication is used, these are custodians whose file has been de-duplicated; multiple custodians separated by semicolons |
| Filename | The original name of the native file |
| Document Title | The title of a non-email document |
| File Extension | File extension of document (*e.g.*, .msg, .docx, .xlsx, etc.) |
| File Size | The size of the file |
| Document/ File Type | Type of document (*e.g.*, email, e-document, attachment, hardcopy) |
| Date Created | Date document was created (*e.g.*, 01/01/2001) |
| Time Created | Time document was created (*e.g.*, 17:00) |
| Date Last Modified | Date the document was last modified (*e.g.*, 01/01/2001) |

| FIELD NAME | DESCRIPTION |
| --- | --- |
| Time Last Modified | Time the document was last modified (*e.g.*, 17:00) |
| Date Sent | Date email was sent (*e.g.*, 01/01/2001) |
| Time Sent | Time email was sent (*e.g.*, 17:00) |
| Sort Date/Time | Date taken from email sent and repeated for "parent" document and all "children" items to allow for date sorting |
| Email From | Sender of email |
| Email Subject | Subject line of email |
| Email To | Recipient(s) of email |
| Email BCC | Blind-copied recipients of email |
| Email CC | Copied recipients of email |
| MD5 Hash | MD5 Hash Value of file |
| File Path | Original file path where file was kept (by the custodian) |
| Pages | Number of pages per document |
| Parent ID | Begin Bates number of parent document |
| Attachment IDs | Begin Bates number of each child attachment separated by "; " |

**K.**     **Encryption of Production Media.**  To maximize the security of information in transit, any media on which documents or electronic files are produced shall be transferred by the Producing Party via secure online file transfer and may be encrypted by the Producing Party. If a delivery is too large to practicably transfer via secure online transfer, the production shall be delivered on an encrypted external hard drive or flash drive, with the password provided upon receipt. Counsel for the Parties otherwise certify that they will take industry-standard measures to protect the security of all incoming productions and treat produced information in accordance with their respective firms' IT security policies and industry-standard data security measures. For the avoidance of doubt, counsel for the Parties agree that they will apply the same security standards

13

to incoming document productions as those applied to client data. The Parties will meet and confer to discuss any known issues related to security.

  **L.** **Time Zone.** Producing Parties shall produce all ESI normalized to UTC (Coordinated Universal Time).

**V.** **RETROSPECTIVE PRODUCTION OF METADATA**

  **A.** For all Prior Productions, the parties shall produce, when available and producible, the metadata identified in Table 1. The parties reserve the right to seek relief from the Court if compliance with this requirement would create an undue burden.

  **B.** For good cause (e.g., illegibility, formatting complexities, etc.), a party may reasonably request—on a document-by-document basis—that documents from the categories identified in § IV.H.1 that were included in a Prior Production, be produced in native format.

**VI.** **MISCELLANEOUS PROVISIONS**

  **A.** This Protocol is intended solely to address the format of Document and ESI productions in this litigation. Nothing in this ESI Protocol is intended to affect the rights of any Party to object to any requests or demand for production. Nothing in this ESI Protocol shall constitute, or operate as, a waiver of any rights of any Party to object to, or to avoid, discovery or disclosure, in whole or in part, under any applicable law, rule, or order.

  **B.** Nothing in this ESI Protocol establishes any agreement as to either the temporal or subject matter scope of discovery or as to the relevance or admissibility of any Document or ESI. Nothing in this ESI Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of Documents and ESI.

    C.    The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a Producing Party, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be unreasonable, such Producing Party shall inform the Receiving Party in writing as to why compliance with the Protocol is impossible or unreasonable as soon as reasonably practicable.

    D.    Nothing herein is intended to, nor shall be construed to, diminish or otherwise affect any Party's discovery obligations.

    E.    Any practice or procedure set forth herein may be varied by agreement of the Parties or order of the Court.

SO ORDERED on this 10th day of September, 2025.

_____
Hon. Matthew J. Skahill, U.S.M.J.

Dated: September 8, 2025                    Respectfully Submitted,

s/ Charles M. Lizza                          s/ Eric I. Abraham
Charles M. Lizza                             Eric I. Abraham
Sarah A. Sullivan                            William P. Murtha
Alexander L. Callo                           HILL WALLACK LLP
SAUL EWING LLP                               21 Roszel Road
One Riverfront Plaza, Suite 1520             Princeton, NJ 08540
Newark, NJ 07102                             (609) 734-6358
Phone: (973) 286-6700
clizza@saul.com                              William A. Rakoczy
                                             Kevin E. Warner
Douglas E. McCann                            Matthew V. Anderson
dmccann@fr.com                               Daniel Sokoloff
Robert M. Oakes                              Wojciech K. Jankiewicz
oakes@fr.com                                 RAKOCZY MOLINO MAZZOCHI SIWIK LLP
Gregory Booker                               6 West Hubbard Street, Suite 500
booker@fr.com                                Chicago, Illinois 60654
FISH & RICHARDSON P.C.                       (312) 527-2157
222 Delaware Avenue, 17th Floor
P.O. Box 1114                                *Attorneys for Defendant Apotex Inc.*
Wilmington, DE 19899
Telephone: (302) 652-5070

Corrin N. Drakulich
drakulich@fr.com
Christina Brown-Marshall
brown-marshall@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St., NE
21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005

Deanna Reichel
reichel@fr.com
Alexander Rafferty
rafferty@fr.com
FISH & RICHARDSON P.C.
60 South 6th Street, Suite 3200
Minneapolis, MN 55402
Telephone: (612) 335-5070

*Attorneys for Plaintiffs Incyte Corp. and Incyte Holdings Corp.*